**Paul WALLACE, Plaintiff,**

v.

**The Hon. Elliott L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.**

No. 72 C 7(1).

United States District Court,
E. D. Missouri, E. D.

Dec. 5, 1972.

Melton M. Lewis, Attorney, Legal Aid Society of St. Louis, St. Louis, Mo., for plaintiff.

Daniel Bartlett, Jr., U. S. Atty., Robert E. Grote, Asst. U. S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM

MEREDITH, District Judge.

This is an action filed pursuant to 42 U.S.C. § 405(g) of the Social Security Act, wherein the plaintiff seeks judicial review of the decision of the Secretary of Health, Education, and Welfare denying his application filed on August 17, 1970, for disability insurance benefits and for a period of disability under 42 U.S.C. §§ 416(i) and 423.

After the application was filed, the claim was denied and on July 12, 1971, at plaintiff's request a hearing was held at which plaintiff and his attorney appeared. On September 20, 1971, the hearing examiner rendered a decision unfavorable to the plaintiff. He found the plaintiff was not under a disability as defined in the Social Security Act at any time when he met the earnings requirement of the law. On November 8, 1971, the Appeals Council of the Social Security Administration affirmed the decision of the hearing examiner. From this decision, the plaintiff appeals.

Judicial review as determined by 42 U.S.C. § 405(g) provides as follows:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ."

Under this section, the Court is limited to ascertaining whether on the record as a whole there is substantial evidence to support the Secretary's findings of fact. Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963).

To qualify for disability insurance benefits and a period of disability under 42 U.S.C. §§ 423 and 416(i), plaintiff must meet the insured status requirements of these sections.

The term "disability" is defined in section 423 to mean:

"(d)(1) . . .

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . .

(2) For purposes of paragraph (1) (A)—

(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, . . .
" . . .

(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

. . . . . .

(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

For purposes of establishing a period of disability under section 416(i), the same disability provisions as contained in section 423(d)(1)(A), (2)(A), (3), and (5), quoted supra, are applied.

Plaintiff's application filed on August 17, 1970, states that he was born February 28, 1926, and that he became unable to work on March 11, 1970, at the age of forty-four by reason of muscular atrophy in both legs.

On June 24, 1970, plaintiff underwent a comprehensive physical examination at the Veterans Administration hospital at Jefferson Barracks, Missouri. The examination revealed that his organ systems were intact. The range of motion of his cervical and dorsal spine was normal. Knee motion was normal with no clinical evidence of instability. Cruciate and collateral ligaments were intact bilaterally. There was no calf atrophy. Heel and toe walking was normal. Squatting was impaired ten to fifteen percent. Straight leg raising tests were negative bilaterally. The diagnosis was "residual medial Menisectomies mild."

In April 1970, plaintiff underwent a medical examination for the Missouri Division of Welfare. The examination was conducted by C. A. Lichty, M.D., a general practitioner. Dr. Lichty reported a diagnosis of "traumatic arthritis both knees—surgical intervention—chronic low back syndrome." He said plaintiff was "ambulatory but cannot work for any length of time." He further stated that plaintiff would "probably never" be able to resume his usual work or homemaking activities. Dr. Lichty certified that plaintiff " . . . has a physical or mental disability which renders him incapacitated to work in the usual manner at any occupation for which his age, training, experience or education would fit him."

On June 3, 1970, plaintiff was examined by Carl M. Rylander, M.D., an orthopedic surgeon. Dr. Rylander reported in part as follows:

"On examination he could stoop over quite well and lacked about five inches of being able to touch the floor with his fingertips without bending the knees. He could lean to either side and backward quite well without difficulty. Straight-leg-raising was done normally, and Lasegue test was nega-

tive. There were no sensory or reflex changes of the legs, nor was there any muscle weakness noted. There was tenderness to either side of the lumbar spine. In fact, the patient jumped rather violently when I touched the lumbar area. He could flex both hips normally, but sometimes he jumped with rotation, however, this was not consistent.

"There was no instability of the right knee. The patient jumped when I pressed various places about the right knee. There was minimal tenderness over the right knee joint, mainly on the medial side. There was just a little grating with movement of the right patella, and apparently there was some pain associated with this. There was also tenderness on the underside of the right patella. I obtained x-rays of the lumbo-sacral spine and of the right knee, a photocopy of which report is enclosed. The x-rays showed arthritic changes of the right knee and the spine.

"As stated above, the patient did not complain of back pain on the day of the examination. However, I think it is quite likely that this man does have pain in his back after working. I would think that he should be able to do some type work, particularly something at which he could be seated."

On June 10, 1970, L. K. Williams, M.D., a psychiatrist, examined plaintiff. Dr. Williams reported in part as follows:

"Mr. Wallace was edentulous at the time he visited my office. He spoke quite freely and willingly, very spontaneously and gave a plethora of details. There seemed no particular defects of mood at the time. His speech was of normal rate and rhythm, there was a slight slurring but this was felt to be largely a result of his edentulous state. Answers to questions were all coherent and relevant. There were no gross distortions of thought association detected. Memory seemed quite good for remote and recent events.

Orientation was good in all spheres. Intellectually he was estimated to operate in the average to bright average range. He denied drinking to any extent but admits that at one point he had drank fairly heavily.

"I see no evidence during this interview of any psychotic symptomatology nor of any particularly violent acting out tendencies however his very checkered work record indicates a considerable lack of stability in his personality, something which I feel that therapy is not likely to change to any great extent. Possibly some help could be offered him through vocational rehabilitation but his extremely checkered employment history indicates the probability that the results would be far from satisfactory. Quite possibly he is going to need some sort of financial assistance on a very long term basis."

On September 2, 1970, plaintiff was examined by James E. Campbell, M.D., a general practitioner. Dr. Campbell reported on plaintiff's medical history as follows:

"Complaints of painful knees which prevent him from working.

Had leg surgery in 1945 while in the Navy. Had 2 operations on the left knee and was in hospital for almost a year.

Right knee was injured while working for Railroad in 1958 which required 2 operations for ligament and cartilage injuries. This leg was left with permanent numbness of the anterior and lateral surface of the leg and foot.

In 1961 he had a back injury when a soil pipe fell on his back while working as a plummber. He received compensation for this injury. Has continued to have trouble with his back.

In 1967 traumatic amputation of left middle finger at distal joint and severe lacerations of the index finger. The index finger continues to cause some disability."

The doctor made the following physical findings:

"Well developed—well rounded

BP—130/80

Head—neck—negative

Lungs—clear

Heart—Regular rate —rhythm
        No murmurs

Abdomen—negative

"*Extremities*:

(1) Left middle finger amputation at distal joint.

(2) Left index finger—scar tissue limits motion to about ⅔ normal range.

*Back*—limitation of forward and lateral movement moderate muscle spasm.

*Knees*—limitation of flexion in squatting position. Mild enlargement and tenderness around knee joints.
        No increased fluid.
        No ligament instability noted
        Scars—from surgery of both knee joints.

This person in addition to the physical disabilities exhibits emotional instability and excessive nervousness as noted on previous occasions.

Has an area of hypo-aesthesia of anterior-lateral surface of left lower leg

I have seen him on a number of occasions with various minor complaints and injuries.

His complaints with knees and back are consistent but seem to be intensified with psychoneurotic and emotionally unstable tendencies.

His complaints are permanent and I would *doubt* that he would be a good candidate for rehabilitation"

He diagnosed plaintiff's condition as:

"1. Traumatic arthritis of both knees.

2. Arthritis of spine and/or chronic low back strain.

3. Loss of distal phallanx of left middle finger.

4. Partial ankylosis of left index finger.

5. Emotional instability."

On July 27, 1971, plaintiff was admitted to the University of Missouri Medical Center at Columbia, Missouri. He stayed there eight days. A comprehensive physical examination was essentially negative except for the obvious loss of his left middle finger and the tip of his right index finger, a slightly enlarged prostate, decreased vibratory sense in his lower extremities, and hyperventilation. The hospital summary report reads in part as follows:

"Hospital Course: The patient was admitted with a history of multiple complaints which could not easily fit together in one disease process. Examination for the metabolic causes of peripheral adenopathy were examined and no abnormalities were found. The patient was thought to most probably have a psychophysiological weakness. He was seen in consultation with the Urology Service who after reviewing his intravenous pyelogram and cystogram thought that the patient should have a resection of his prostate.

Discharge Diagnoses:

1. Psychophysiological weakness

2. Benign prostatic hypertrophy

Disposition:

The patient was to be admitted to the Urology Service on 8–23–71 for transurethral resection of the prostate.

Discharge Medications:

None"

Plaintiff lives with his wife in a one-floor five-room house. His wife is retired. She receives $91.00 a month social security retirement benefits, $85.00 a month public assistance. Plaintiff applied for Veterans Administration benefits in June 1970, but he was turned down.

Plaintiff arises at 6:30 in the morning and later works about an hour a day in his garden. He takes care of his personal needs. He drives a car where-

ever he wishes to go, and spends about two hours each afternoon taking naps. He retires at 10:00 p. m.

At a disability interview plaintiff stated that he could walk about a mile without resting, but he told the hearing examiner he could walk only three or four blocks before needing a rest. He testified that he loses his equilibrium when he tries to climb. He said he can drive an automobile about two hours without tiring. He and his wife each drove part of the way during the 175 mile trip to the site of the hearing.

Plaintiff completed elementary school and obtained a high school equivalency certificate. He also completed one year of training at the Indiana College of Mortuary Science. He was in the Navy for two years. He has worked at a variety of jobs including railroad laborer, mechanic, packing house smoker and curer, free-lance embalmer and several sales jobs. He testified that he last worked on March 14, 1970. Since that time he applied for jobs as a salesman and as a sanitation inspector but was turned down when the prospective employer saw his medical reports. Plaintiff also testified that he passed a United States Civil Service poultry and meat inspector examination, but was never appointed to a job as such. In an interview with a social security representative on November 25, 1970, the plaintiff said he had no interest in vocational rehabilitation.

■ The question for the Court to determine is whether or not the Secretary's decision is supported by substantial evidence. The Secretary determined that plaintiff was not under a disability on or before December 31, 1970, the last day when he met the earnings requirement for insured status. A careful examination of this record convinces the Court that the Secretary's decision was based on the weight of substantial evidence. Accordingly, the Court finds that the decision of the Secretary should be affirmed and this cause will be dismissed with prejudice.